IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
ERIE DIVISION

|  |  |  |
|---|---|---|
| ANTHONY HAPPEL, | ) | 1:23-CV-13-SPB-RAL |
|  | ) |  |
| Plaintiff | ) | SUSAN PARADISE BAXTER |
|  | ) | United States District Judge |
|  | ) |  |
| v. | ) | RICHARD A. LANZILLO |
|  | ) | Chief United States Magistrate Judge |
|  | ) |  |
| MARK BISHOP, et al, | ) | Report and Recommendation on |
|  | ) | Defendants' Motions to Dismiss |
| Defendants | ) |  |
|  | ) | ECF Nos. 49, 53, 55 |

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

I.      Recommendation

It is respectfully recommended that the motions to dismiss filed by Angela Trowbridge [ECF No. 49], UPMC [ECF No. 53], and the Defendants employed by or affiliated with the Venango County Prison[1] [ECF No. 55] each be granted in part and denied in part.

II.     Report

A.  Procedural Background

Plaintiff Anthony Happel, an inmate formerly incarcerated at the Venango County Prison, initiated this action by filing a *pro se* complaint in the Court of Common Pleas of

---

[1] These Defendants are Mark Bishop, Major Smith, and the Venango County Prison itself. Happel's Second Amended Complaint also named Venango County as a Defendant. A county prison is not an entity distinct from the county that operate it. *See e.g., Regan v. Upper Darby Twp.*, 2009 WL 650384, at *4 (E.D. Pa. Mar. 11, 2009), *aff'd*, 363 Fed. Appx. 917 (3d Cir. 2010). The Court will therefore construe Venango County and the Venango County Prison as a single Defendant. The Court will occasionally refer to the Venango County affiliated Defendants as the "Venango County Defendants."

Venango County.[2]   ECF No. 1.  Defendants removed the action to this Court on January 19, 2023.  *Id*.  In response to a series of motions to dismiss, Happel filed his Second Amended Complaint – the currently operative pleading – on July 5, 2023.  ECF No. 48.

In his pleading, Happel alleges that various officials and medical providers affiliated with the Venango County Prison violated his rights under the Fourteenth Amendment to the United States Constitution, the Americans with Disabilities Act (ADA), and the Rehabilitation Act (RA) by failing to provide appropriate treatment for his opioid addiction withdrawal symptoms and, in the case of governmental and individual policymaking Defendants, by adopting policies that precluded such treatment.[3]  As individual Defendants, Happel has identified Mark Bishop, the former Warden of the Venango County Prison, Major Smith, the current Warden, and Angela Trowbridge, the nurse in charge of "intakes and medical treatment programs for inmates" at the prison.  ECF No. 48 ¶¶ 5-7.  Happel has also sued Venango County, the Venango County Prison, and UPMC, a private hospital contracted to provide medical services to inmates at the prison.  *Id*. ¶¶ 2-4, 8.  By way of relief, Happel seeks compensatory and punitive damages.  *Id*.

Each of the Defendants has moved to dismiss the Second Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6), and the County Defendants have also moved in the alternative for summary judgment pursuant to Fed. R. Civ. P. 56.  *See* ECF Nos. 49, 53, 55.  Happel has filed a

---

[2] Happel has since been transferred to the State Correctional Institution at Forest.  *See* ECF No. 78.  Although he initiated this action on his own, Happel is currently represented by counsel.  *See* ECF No. 89.

[3] Although the first two counts of Happel's pleading are redundantly captioned as "Violation of the Americans with Disabilities Act," the sub-paragraphs in Count Two refer to Section 504 of the Rehabilitation Act.  It appears that Happel simply mislabeled Count Two.

response, *see* ECF No. 90, and Defendant UPMC has filed a reply.  ECF No. 91.  The motions are ripe for disposition.[4]

B.  Factual Background

The following factual averments are accepted as true for purposes of the pending motions.  At all relevant times, Happel has suffered from opioid use disorder (OUD), a mental health condition characterized by a problematic pattern of opioid misuse causing distress and impairment to daily life.[5]  Over the years, Happel's struggle with opioid addiction has negatively impacted his employment and family relationships and forced him to undergo frequent counseling, rehabilitation, and detoxication.  *Id.* ¶¶ 15-18.  Since the onset of his opioid addiction, Happel has experienced prolonged "clean" periods only when he has been prescribed a drug called Subutex[6] as part of a Medication-Assisted Treatment (MAT) or Medications for Opioid Use Disorder (MOUD) program.  *Id.* ¶¶ 15, 18.  MAT "has helped [Happel] maintain a more normal lifestyle," "sustain housing and relationships," and "open and start a business."  *Id.* ¶ 20.

---

[4] The Court has jurisdiction over Happel's claims pursuant to 28 U.S.C. § 1331.  This matter has been referred to the undersigned United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b).

[5] *See* https://my.clevelandclinic.org/health/diseases/24257-opioid-use-disorder-oud (last visited 2/12/24).  The Court may take judicial notice of background medical facts pursuant to Federal Rule of Evidence 201(b)(2) because they are "not subject to reasonable dispute [and are] capable of accurate and ready determination by resort to a source whose accuracy cannot be reasonably questioned."  *See, e.g., Rankins v. Washington*, 2017 WL 4364060, at *3 (W.D. Mich. Sep. 29, 2017) (taking judicial notice of facts presented on prominent medical website); *Giddings v. Cradduck*, 2017 WL 2791345, at *6 n. 4 (W.D. Ark. June 6, 2017) (same); *Green v. CDCR*, 2016 WL 6124148, at *1 n. 1 (E.D. Cal. Oct. 19, 2016) (same); *Arce v. Chicago Transit Authority*, 193 F.Supp.3d 875, 881 (N.D. Ill. 2016) (same).

[6] Subutex is the brand name for a generic drug called buprenorphine.  WebMD describes buprenorphine as belonging to "a class of drugs called mixed opioid agonist-antagonists" that are used to help "prevent withdrawal symptoms caused by stopping other opioids."  https://www.webmd.com/drugs/2/drug-75100/subutex-sublingual/details (visited 2/12/24).

On September 14, 2022, Happel was arrested and taken to the Venango County Prison. ECF No. 48 ¶ 11.  During intake, Happel advised Defendant Trowbridge that he was actively taking Subutex for his opioid addiction and explained that it would be "dangerous" if he were forced to "cold turkey detox" from that medication.  *Id.* ¶ 21.  Trowbridge responded that the prison would only provide buprenorphine to pregnant women and that Happel "would not get [his] medication or any taper."  *Id.*  As a result, Happel "went through horrible withdrawal lasting a month and a half."  *Id.* ¶ 33.  His most severe withdrawal symptoms lasted for two weeks and included "vomiting, shaking, anxiety, no sleep, sweating, diarrhea, [and] two mini seizures."  *Id.*  During those two weeks, Happel "could not function properly or eat" and spent most of his time "shaking in bed tossing and turning or bent over the toilet vomiting stomach bile."  *Id.* ¶ 34.  He also experienced less severe symptoms including difficulty concentrating, socializing, and reading.[7]  *Id.* ¶ 33.  Finally, despite the serious health risks associated with failing to properly taper him off his buprenorphine prescription, Happel's health, weight, and vitals were never monitored by the nursing staff during his withdrawal period.  *Id.* ¶ 22.

C.  Standards of Review

A motion to dismiss[8] pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint.  *See Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).  In deciding a Rule 12(b)(6) motion to dismiss, the court accepts as true all factual allegations in the

---

[7] In addition to the symptoms that he has already experienced, Happel notes that forced withdrawal "causes a heightened risk of fatal overdose upon re-exposure to even small amounts of opioids."  ECF No 48 ¶ 46.  As a result, he states that drug overdose is the leading cause of death for former inmates upon release from incarceration.  *Id.* ¶¶ 46, 48.

[8] The Venango County Defendants have also moved, in the alternative, for summary judgment.  *See* ECF No. 55.  Counsel for Happel has filed an affidavit pursuant to Fed. R. Civ. P. 56(d) identifying specific areas of discovery necessary for Happel to respond to the factual assertions upon which the Venango County Defendants base their request for summary judgment.  *See* ECF No. 90-1.  Upon consideration of Happel's Rule 56(d) affidavit, the Court finds that Happel's surviving claims require a more fully developed record for proper resolution.  Accordingly, the Court should decline to address the factual assertions upon which the Venango County Defendants base their request for summary judgment until after Happel has had a reasonable opportunity to conduct discovery.

complaint and views them in a light most favorable to the plaintiff.  *See U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002).  The "court[] generally consider[s] only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim" when considering the motion to dismiss.  *Lum v. Bank of Am.*, 361 F.3d 217, 222 n.3 (3d Cir. 2004) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir.1997)).

In making its determination under Rule 12(b)(6), the court is not opining on whether the plaintiff is likely to prevail on the merits; rather, the plaintiff must only present factual allegations sufficient "to raise a right to relief above the speculative level."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004)).  *See also Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  Furthermore, a complaint should only be dismissed pursuant to Rule 12(b)(6) if it fails to allege "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570 (rejecting the traditional Rule 12(b)(6) standard established in *Conley v. Gibson*, 355 U.S. 41, 78 (1957)).

While a complaint does not need detailed factual allegations to survive a motion to dismiss, a complaint must provide more than labels and conclusions.  *See Twombly*, 550 U.S. at 555.  A "formulaic recitation of the elements of a cause of action will not do."  *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  Moreover, a court need not accept inferences drawn by a plaintiff if they are unsupported by the facts as explained in the complaint.  *See California Pub. Employee Ret. Sys. v. The Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004) (citing *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)).  Nor must the court accept legal conclusions disguised as factual allegations.  *See Twombly*, 550 U.S. at 555; *McTernan v.*

*City of York, Pennsylvania*, 577 F.3d 521, 531 (3d Cir. 2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").  Put another way, while the Court must view the factual allegations of the complaint as true, the Court is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007).  Expounding on the *Twombly*/*Iqbal* line of cases, the Third Circuit has articulated the following three-step approach:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)).  This determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Finally, because Happel filed his Second Amended Complaint while he was still proceeding *pro se*, the Court will hold it to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520-521 (1972).  If the Court can reasonably read a *pro se* complaint to state a claim upon which relief can be granted, it will do so despite the litigant's failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or unfamiliarity with pleading requirements.  *See Boag v. MacDougall*, 454 U.S. 364 (1982); *United States ex rel. Montgomery v. Bierley*, 141 F.2d 552, 555 (3d Cir. 1969).  Despite this leniency, "*pro se* litigants still must allege sufficient facts in

their complaints to support a claim." *Mala v. Crown Bay Marina, Inc*., 704 F.3d 239, 245 (3d Cir. 2013) (citing *Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996)).

    D.   Analysis

        1.   ADA and RA claims

In Counts One and Two, Happel claims that Venango County, the Venango County Prison, UPMC, Bishop, and Trowbridge violated Title II of the ADA and § 504 of the Rehabilitation Act by failing to adequately accommodate his disability.  More specifically, he alleges that the Defendants have discriminated against him based on his opioid addiction disability and that their refusal to provide appropriate treatment for his addiction caused him to be excluded from participation in programs and services available to non-disabled inmates such as eating, exercising, socializing, and receiving medical treatment.

Title II of the ADA provides that "no qualified individual with a disability shall, by reasons of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  Section 504 of the RA similarly provides that "[n]o otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  29 U.S.C. § 794(a).  "Because the same standards govern both the [Rehabilitation Act] and ADA claims," both claims may be addressed "in the same breath."  *Chambers ex rel. Chambers v. School Dist. of Phila. Board of Educ*., 587 F.3d 176, 189 (3d Cir. 2009) (citing *McDonald v. Pennsylvania*, 62 F.3d 92, 95 (3d Cir. 1995) ("Whether suit is filed under the Rehabilitation Act or under the Disabilities Act, the substantive standards for determining liability are the same." (citation

omitted)).[9]  To establish a violation of either statute, a plaintiff must demonstrate: (1) that he is a

qualified individual; (2) with a disability; and (3) that he was denied the opportunity to

participate in or benefit from the services, programs, or activities of a public entity, or was

otherwise subject to discrimination by that entity, by reason of his disability.  *Bowers v. National*

*Collegiate Athletic Association*, 475 F.3d 524, 553 c. 32 (3d Cir. 2007).

      Before addressing the sufficiency of Happel's pleading, two prefatory matters must be

addressed.  First, the Court notes that Happel has identified two individual Defendants –

Trowbridge and Bishop – as targets of his ADA and RA claims.  *See* ECF No. 48 ¶¶ 71-76.  As

our Court of Appeals has recognized, neither statute permits claims for monetary damages

against government officers in their individual capacities.  *See*, *e.g.*, *Kokinda v. Pa. Dep't of*

*Corr.*, 779 Fed. Appx. 938, 942 (3d Cir. 2019) (holding that plaintiff's "claims for individual

damages liability under Title II of the ADA fail for the simple reason that there is no such

liability.") (internal citations omitted)); *Matthews v. Pa. Dep't of Corr.*, 613 Fed. Appx. 163,

169-70 (3d Cir. 2015) (agreeing with the Second and Eighth Circuits that "Title II of the ADA

does not provide for suits against state officers in their individual capacities").  Similarly,

Happel's designation of UPMC as a defendant with respect to those same claims runs afoul of

the well-established proposition that a private corporation does not become a public entity

amenable to suit under Title II of the ADA and § 504 of the RA "merely because it contracts

with a public entity to provide some service."  *Matthews v. Pennsylvania Department of*

*Corrections*, 613 Fed. Appx. 163, 170 (3d Cir. 2015) (quoting *Edison v. Douberly*, 604 F.3d

1307, 1310 (11th Cir. 2010)).  *See also Schiavone*, 2022 WL 3142615, at *7 (dismissing ADA

---

[9] While causation standards are slightly different under the ADA and RA – under the RA, "the disability must be the sole cause of the discriminatory action, while the ADA only requires but-for causation" – the allegations in this case are sufficient to establish causation under both standards.  *See Furgess v. Penn. Dep't of Corr.*, 933 F.3d 285, 291 n. 25 (3d Cir. 2019).

and RA claims against the private corporations contracted to provide medical services to inmates at the Luzerne County Correctional Facility); *Keifer v. PrimeCare Medical, Inc*., 2017 WL 3142279, at \*3 (E.D. Pa. July 24, 2017) (dismissing ADA claim against health care provider after finding "no basis for concluding that . . . a private entity contracting to provide health care services to a number of prisons, including Lancaster County Prison in the Commonwealth of Pennsylvania, is an instrumentality of the state or otherwise a public entity.").

In his counseled response brief, Happel concedes that "the ADA does not provide for a private right of action against an individual," and, therefore, "his ADA claim is only against Venango County."  ECF No. 90 at 10 n. 14.  Accordingly, the Court should grant Defendants' motions to dismiss Happel's ADA claims against Trowbridge, Bishop, and UPMC.[10].

Having narrowed the scope of Happel's ADA and RA claims to the appropriate Defendant, the Court now turns to the substantive elements of his claims.  Each will be addressed in turn.

a.   Plaintiff is a qualified individual

On its face, the first element of an ADA/RA claim – that Happel is a qualified individual with a disability – would not appear to warrant much discussion.  The ADA defines "disability" as a "physical or mental impairment that substantially limits one or more major life activities," and the ADA's implementing regulations explicitly state that "drug addiction" constitutes a physical or mental impairment.  42 U.S.C. § 12102; 28 C.F.R. § 35.108(b)(2).

---

[10] There is no question that prisoners have standing to sue under the ADA and RA.  Title II of the ADA, "which prohibits 'a public entity' from discriminating against a 'qualified individual with a disability' on account of that individual's disability, covers inmates in state prisons." *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 208 (1998) (quoting 42 U.S.C. §§ 12141 & 12132).  Section 504 of RA provides that "[n]o otherwise qualified individual with a disability in the United States ... shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).  However, it is unclear whether the Venango County Prison is an "entity" or merely a physical location maintained by Venango County.  In either case, Venango County is a proper defendant to both the ADA and RA claims and the naming of the prison appears to be redundant.

Happel's OUD diagnosis clearly satisfies this requirement.  *See Strickland v. Delaware County*, 2022 WL 1157485, at *3 (E.D. Pa. April 19, 2022) ("Strickland is a qualified individual with a disability in the form of his OUD.").

Notably, however, "both the ADA and the RA contain carve-outs stating that individuals are not deemed 'qualified' if they are 'currently engaging in the illegal use of drugs'" at the time of the alleged discrimination.  *See* 42 U.S.C. § 12210(a); 29 U.S.C. § 705(20)(C)(i).  The illegal drug use must be "recent[] enough so that continuing use is a real ongoing problem."  *New Directions Treatment Servs. v. City of Reading*, 490 F.3d 293, 309 (3d Cir. 2007).  Relying on this "carve-out" provision, Defendants contend that Happel is not a qualified person within the meaning of the ADA or RA because, in an earlier version of his pleading, he admitted to using "street Xanax" at the time of his arrest.  *See* ECF No. 1-3.

Initially, it is unclear whether the carve-out applies to Happel's behavior.  As our Court of Appeals has noted, the statutory carve-out "is an odd fit" for cases involving treatment for drug addiction.  *New Directions*, 490 F.3d at 309.  This is because:

> Invariably, the people who sign up for drug rehabilitation programs are either "currently engaging in the illegal use of drugs," 42 U.S.C. 12210(a), or have used illegal drugs "recently enough so that continuing use is a real ongoing problem." *Brown*, 246 F.3d at 1188. In fact, in order to be admitted to a methadone clinic under federal law, a person needs to have had an opioid addiction for at least one year.
>
> People who abstain from drug use have little need for methadone clinics. If the ADA and RA were interpreted to exempt from its protections individuals with drug addictions seeking help—the argument the Defendant makes—section (c) would be reduced to a nullity and mere surplusage. Some of the very people the acts seek to protect would not be protected. Whether any of the prospective patients were engaging in the use of illegal drags is orthogonal to the question of whether the ADA or RA provides protection for them.

*RHJ Med. Ctr., Inc. v. City of DuBois*, 754 F. Supp. 2d 723, 749–50 (W.D. Pa. 2010).  Although

a prison is not a rehabilitation program, the same tension arises in the prison context, where prison officials are legally bound to provide necessary medical care to inmates with drug addictions. *Compare Schiavone v. Luzerne County*, 2022 WL 3142615, at *8 (M.D. Pa. Aug. 5, 2022) (noting the inherent tension between the fact that drug addiction is a recognized disability under the ADA, but would also appear to run afoul of the carve-out provision) *with McKissick v. County of York*, 2011 WL 5117621, at *9 (M.D. Pa. Oct. 25, 2011) (observing that plaintiff's admission to prison officials "that he has used three bags of heroin just two days before he was taken into custody" . . . gives rise to a serious question of whether [he] even qualified under the ADA").

This issue is premature in the current posture of this case, however, because "[t]he question of whether drug use is effectively ongoing or a serious problem" is a "fact-bound inquiry . . . best left for analysis at a later stage in the proceeding" when the court can review "details of the [plaintiff's] treatment and drug history." *Schiavone*, 2022 WL 3142615, at *8 (citing *New Directions*, 490 F.3d at 310). This is particularly true where, as here, the only evidence of prior drug use appears in a pleading that has been superseded by amendment. *See, e.g.*, *W. Run Student Hous. Assocs., LLC v. Huntington Nat. Bank*, 712 F.3d 165, 173 (3d Cir. 2013) (noting that, although a superseded pleading may be offered as evidence to rebut a contrary assertion at the summary judgment stage, "at the motion to dismiss stage, when the district court typically may not look outside the four corners of the amended complaint, the plaintiff cannot be bound by allegations in the superseded complaint."). For each of these reasons, the Court concludes that Happel has adequately alleged facts to support that he is a qualified individual with a disability sufficient to survive a motion to dismiss.

b.  Precluded from participating in services, programs, or activities

Happel next avers that the prison's refusal to provide him with OUD treatment and properly taper his medicine deprived him of the ability to concentrate, socialize, read, eat, or function properly.  Defendants, in response, characterize Happel's claims "as a failure to attend to the medical needs of an inmate" and argue that such claims "are not actionable under Title II of the ADA."  ECF No. 56 at 12 (citing, *e.g.*, *Thompson v. Pennsylvania Dept. of Corr.*, 615 F.Supp.2d 411, 426-27 (W.D. Pa. May 12, 2009)).

As a general proposition, Defendants are correct: the ADA "prohibits disability-based discrimination, not inadequate treatment for the disability."  *Kokinda*, 663 Fed. Appx. at 159 (internal quotation omitted).  Nevertheless, "courts within this Circuit have drawn distinctions between claims alleging inadequate medical treatment and claims alleging denial of access to prescription medications."  *McPherson v. Cnty. of Dauphin*, 2020 WL 1558206, at *3 (M.D. Pa. Mar. 24, 2020) (collecting cases).  *See also Kloss v. Correct Care Sols.*, 2018 WL 6268270, at *4 n.4 (W.D. Pa. Oct. 31, 2018) (noting that, because "[d]enying access to medications is not . . . a medical judgment or medical negligence, . . . such claims can be actionable under the ADA"); *McKissick v. Cty. of York*, 2010 WL 1930132, at *7 (M.D. Pa. Mar. 19, 2010) (allowing an ADA claim to proceed where prison officials refused to provide a detainee with methadone).  This is because, unlike decisions "regarding the diagnosis and treatment" of a disease, access to prescription medications "is part of a prison's medical services and thus is one of the 'services, programs, or activities' covered by the ADA.'"  *Kiman v. New Hampshire Dept. of Corr.*, 451 F.3d 274, 286-87 (3d Cir. 2006).  Happel's allegation that Defendants refused to provide access to his buprenorphine prescription falls squarely within this category.

Additionally, the United States Supreme Court has recognized that "[m]odern prisons provide inmates with many recreational 'activities,' medical 'services,' and educational and

vocational 'programs,' all of which at least theoretically 'benefit' the prisoners (and any of which disabled prisoners could be 'excluded from participation in')." *Strickland*, 2022 WL 1157485, at *3 (quoting *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998)).  Thus, a prison's "refusal to accommodate inmates' disabilities 'in such fundamentals as mobility, hygiene, medical care, and virtually all other prison programs'" represents a denial "of the benefits of a prison's services, programs, or activities." *Furgess*, 933 F.3d 285, 290 (ed Cir. 2019) (citing *United States v. Georgia*, 546 U.S. 151, 157 (2006)).  As noted above, Happel claims that the prison's failure to accommodate his disability deprived him of the ability to eat, read, exercise, socialize, or even leave his cell.  This is sufficient to satisfy the pleading standard. *See Strickland*, 2022 WL 1157485 at *3 (denying motion to dismiss where plaintiff "properly alleged that, by denying him his prescribed medication, correctional officials precluded Strickland from participating in exercise and meals.").

       c.   By reason of such disability

Finally, Happel must allege that the discrimination he experienced stemmed from his disability.  "Discrimination under the ADA [and the Rehabilitation Act] encompasses not only adverse actions motivated by prejudice and fear of disabilities, but also includes failing to make reasonable accommodations for a plaintiff's disabilities." *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999).  Happel maintains that Defendants subjected him to unlawful discrimination in two ways: by enforcing a blanket policy against providing medically necessary treatment for his OUD, and by failing to modify that policy to provide him with a reasonable accommodation for his own disability.

Turning first to the facial validity of the policy, Happel has plausibly alleged that the prison's buprenorphine policy prevents inmates such as himself from receiving adequate medical

care in the form of medically necessary prescription drugs.  This precise allegation has consistently been found to state a claim for relief under the ADA.  *See*, *e.g*., *Strickland*, 2022 WL 1157485, at *3 ("The Court finds that Plaintiff has adequately pleaded that he experienced disability-based discrimination. Plaintiff has plausibly alleged that the methadone policy may prevent people with OUD, such as Strickland, from receiving adequate medical care at George W. Hill."); *Schiavone*, 2022 WL 3142615, at *8 (allegation that prison denied medical services, including MAT medications, to an inmate with an opioid addiction was sufficient to state a claim under the ADA); *Santore v. Northumberland County*, 2022 WL 1736012, at *5 (M.D. Pa. Nov. 29, 2022) ("Plaintiff is correct that courts have found a prison's failure to provide access to prescribed medications is actionable under the ADA and RA because it is considered the denial of a service.").

The same is true of Venango County's refusal to modify its policy to provide a reasonable accommodation for Happel's disability.  As explained in *Strickland*:

> Plaintiff has also plausibly alleged that Defendants failed to accommodate his disability, which Congress has recognized "will often have the same practical effect as outright exclusion."  *Tennessee v. Lane*, 541 U.S. 509, 511 (2004).  Assuming Plaintiff's non-conclusory allegations to be true, Defendants failed to undertake any individualized review of Strickland's situation to determine whether he could be safely provided with his prescribed medical treatment, provide Strickland with an adequate alternative treatment, or otherwise reasonably accommodate Strickland's disability.

2022 WL 1157485, at *3.  *See also Schiavone*, 2022 WL 3142615, at *8 (allegation that "Luzerne County . . . failed to accommodate [plaintiff's] needs during her withdrawal from opioids" was "sufficient to allege a claim under the ADA").

For each of the foregoing reasons, the Court finds that Happel has sufficiently alleged a violation of the ADA and RA against Defendant Venango County.  Accordingly, Venango

County's motion to dismiss those claims should be denied.

      2.  Deliberate indifference

Happel next alleges that the Defendants' refusal to provide him with medical care for his opioid addiction violated his constitutional right to be free from cruel and unusual punishment. Count Three alleges that Trowbridge, Bishop, and UPMC refused to provide him with MAT medication, monitor or treat his life-threatening withdrawal symptoms, or allow him to safely taper his Subutex prescription, while Count Four alleges that Trowbridge, Bishop, UPMC and Venango County implemented and maintained an unconstitutional policy of denying MAT to inmates with OUD.  Defendants argue that Happel's allegations fail to state a claim.

      a.  Responsive factual averments

Before addressing the substance of the Happel's claims, the Court notes that Defendants, in their supporting briefs, rely on numerous factual assertions that do not appear in the Second Amended Complaint.  For example, UPMC states that:

> Plaintiff incorrectly claimed that UPMC manages the medical care at Venango County Prison and that it has some hand in forming the policies applicable to the nursing staff and prison employees. … UPMC does not employ the prison employees, UPMC does not employ the nurses who provide medical care at Venango County Prison, and is not affiliated with the psychiatric consultants who may visit the prisoners. … Upon information and belief, the nurses are employed by and contracted through a separate agency.

ECF No. 54 at 6.  Trowbridge similarly avers that she "is not an employee of UPMC or the jail" and, by implication, was not in a position to make "policy decisions regarding the failure of the Jail to be the detox program that Plaintiff desires."  ECF No. 50 at 5-6.

These assertions run afoul of the well-established principle that a district court, in ruling on a motion to dismiss, is "not permitted to go beyond the facts alleged in the Complaint and the documents on which the claims made therein were based*." In re Burlington Coat Factory Sec.*

*Litig.*, 114 F.3d 1410, 1424–25 (3d Cir. 1997).  Rather, "a court reviewing a motion to dismiss must examine the plausibility of 'allegations in the complaint.'"  *Doe v. Princeton Univ.*, 30 F.4th 335, 344–45 (3d Cir. 2022) (quoting *Twombly*, 550 U.S. at 555).  "Factual claims and assertions raised by a defendant are not part of that scrutiny."  *Id.*  *See also Argott v. Lackawanna Cnty.*, 2023 WL 4485086, at *10 (M.D. Pa. Feb. 6, 2023) (factual claims and assertions raised by a defendant in a brief that were not found in the amended complaint cannot be considered at Rule 12(b)(6) stage).  Otherwise, "every motion to dismiss would become one for summary judgment, a step permitted only under the process outlined in Rule 12(d)."  *Doe*, 30 F.4th at 345.  *See also Bruni v. City of Pittsburgh*, 824 F.3d 353, 361 (3d Cir. 2016) ("[I]t is reversible error for a district court to convert a motion under Rule 12(b)(6) ... into a motion for summary judgment unless the court provides notice of its intention to convert the motion and allows an opportunity to submit materials admissible in a summary judgment proceeding or allows a hearing.")).

Here, Happel alleges in his pleading that UPMC "provides medical care" and "receives federal financial assistance" for providing medical services to inmates at the Venango County Prison.  ECF No. 48 ¶¶ 4, 9.  He also alleges that Trowbridge "was the head nurse at all relevant times," was "in charge of intakes and medical treatment programs for inmates," "created the treatment plan and was responsible for the medical care provided to Plaintiff," and "created and implemented policy regarding treatment for OUD."  *Id.* ¶¶ 7, 30-31.  To disregard those "well-pleaded facts in favor of those mentioned in [Defendants'] brief" would be "erroneous."  *Doe*, 30 F.4th at 344–345.  *See also In re Burlington*, 114 F.3d at 1424-25 ("As far as we can see, the only source of information before the district court that could have provided a basis for the conclusion it reached was defendants' brief in support of their motion to dismiss. … However, since the district court was ruling on a motion to dismiss, it was not permitted to go beyond the

facts alleged in the Complaint and the documents on which the claims made therein were based."). To the extent that Trowbridge and UPMC dispute Happel's well-pleaded averments, they must raise those challenges in a properly supported motion for summary judgment.

      b.  Personal involvement

To prevail in a § 1983 action, a plaintiff "must show that each and every defendant was 'personal[ly] involve[d]' in depriving him of his rights." *Kirk v. Roan*, 2006 WL 2645154, at *3 (M.D. Pa. 2006) (quoting *Evancho v. Fischer*, 423 F.3d 347, 353 (3d Cir. 2006)). This means that each defendant must have played an "affirmative part" in the complained-of misconduct. *Iqbal*, 556 U.S. at 677 ("In a § 1983 suit ... [a]bsent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."); *Oliver v. Beard*, 358 Fed. Appx. 297, 300 (3d Cir. 2009). In the absence of specific allegations that a defendant played a role in depriving the plaintiff of a constitutional right, dismissal is appropriate. *See*, *e.g.*, *Mearin v. Swartz*, 951 F.Supp.2d 776, 781-82 (W.D. Pa. 2013) (dismissing claims pursuant to Rule 12(b)(6) because the plaintiffs had failed to set forth sufficient facts to establish that certain defendants had played an affirmative part in the alleged Eighth Amendment violation).

Here, Happel references Warden Smith only once in his pleading: in the introductory section where he identifies the parties. ECF No. 48 ¶ 6. Aside from noting that Smith took over for Warden Bishop after Bishop's resignation on February 25, 2023 – five months after Happel's intake at the prison – there are no factual averments of any sort concerning Smith. Nor does he identify Smith in connection with any of the four causes of action alleged in his pleading. *See* ECF No. 48 ¶¶ 65-76. Absent allegations of personal involvement, Happel has failed to state a claim against Smith. *See*, *e.g.*, *Gould v. Wetzel*, 547 Fed. Appx. 129 (3d Cir. 2013) (noting that liability under § 1983 requires a defendant's "personal involvement" in the deprivation of a

constitutional right); *Mearin*, 951 F.Supp.2d at 781-82 (dismissing claims pursuant to Rule 12(b)(6) because the plaintiffs had failed to set forth sufficient facts to establish that certain defendants had played an affirmative part in the alleged Eighth Amendment violation).

A similar principle bars Happel's claims against the Venango County Prison.  It is axiomatic that "a prison or correctional facility," such as the Venango County Prison, "is not a 'person' that is subject to suit under federal civil rights laws."  *See Regan v. Upper Darby Twp*., 2009 WL 650384, at *4 (E.D. Pa. Mar. 11, 2009), *aff'd*, 363 Fed. Appx. 917 (3d Cir. 2010) (collecting cases).  Consequently, Happel cannot assert a § 1983 claim against the Venango County Prison.  *Id*.

   c. Direct refusal to provide medical care

As a pretrial detainee, Happel's denial of adequate medical treatment claim is governed by the Due Process Clause of the Fourteenth Amendment rather than the Eighth Amendment, which applies only "after [the State] has secured a formal adjudication of guilt in accordance with due process of law."  *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244 (1983) (quoting *Ingraham v. Wright*, 430 U.S. 651, 671–72 n. 40 (1977)).  To state a claim under the Eighth Amendment, an inmate must allege: (1) a serious medical need; and (2) behavior on the part of prison officials constituting deliberate indifference to that need.  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  The Fourteenth Amendment, however, protects pretrial detainees from "any and all punishment."  *Montgomery v. Aparatis Dist. Co.*, 607 Fed. Appx. 184, 187 (3d Cir. 2015).  The Court of Appeals for the Third Circuit has emphasized that while the *Estelle* analysis can inform the Fourteenth Amendment analysis applicable to pretrial detainees, the Eighth and Fourteenth Amendment standards are not identical.  *See Hubbard v. Taylor*, 399 F.3d 150, 165-66 (2005) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)); *Montgomery v. Ray*, 145 Fed.

Appx. 738, 740 (3d Cir. 2005) (holding that "the Eighth Amendment only acts as a floor for due process inquiries into medical and non-medical conditions of pretrial detainees" and vacating and remanding district court's entry of summary judgment for defendant premised on *Estelle* analysis in a case involving pretrial detainee's claims of inadequate medical care for consideration under the Fourteenth Amendment standard). *See also City of Revere*, 463 U.S. at 244 (holding that "the due process rights of a [pre-trial detainee] are at least as great as the Eighth Amendment protections available to a convicted prisoner").

The proper standard for examining a pretrial detainee's medical need neglect claim is "whether the conditions of confinement (or here inadequate medical treatment) amounted to punishment prior to an adjudication of guilt." *Young v. Kubrin*, 2022 WL 16637729, at \*4 (W.D. Pa. Nov. 2, 2022) (citations omitted). Determining the precise contours of this standard is unnecessary in the current posture of this case, however, because Happel's allegations are sufficient to satisfy the arguably higher "deliberate indifference" standard of the Eighth Amendment. That standard is satisfied by, among other things, an intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of injury, *Durmer v. O'Carroll*, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury." *White v. Napoleon*, 897 F.2d 103, 109 (3d Cir. 1990).

Here, Happel alleges that he informed Trowbridge of his OUD diagnosis and Subutex prescription and was told that he "would not get [his] medication or any taper." ECF No. 48 ¶ 21. He further alleges that, "[a]t no time was the detox process even monitored by nursing" and that "no vitals were taken or weights checked." *Id.* ¶ 22. These allegations are more than sufficient, at this stage in the proceedings, to plausibly allege that Trowbridge completely denied

him access to necessary medical care.  *See*, *e.g.*, *Imhoff v. Temas*, 67 F.Supp.3d 700, 711 (W.D. Pa. 2014) (allegation that defendant "provided no medical treatment for at least 8 days" after plaintiff "informed [prison] personnel of his extensive current drug use" and "repeatedly requested medical assistance when he began experiencing seizures and hallucinations in conjunction with his withdrawal" was sufficient to state a claim); *Strickland*, 2022 WL 1157485, at *4 ("Plaintiff has plainly alleged that he informed medical staff that he had been prescribed a common and medically accepted treatment for OUD, that he was denied that treatment pursuant to an official policy, and that the forced withdrawal that he was instead subjected to caused him substantial pain and suffering."); *Schiavone*, 2022 WL 3142615, at *3 (denying motion to dismiss where defendants allegedly "chose to leave [plaintiff] suffering without appropriate medication [for her heroin addiction] for her entire time in prison").

> d.   Supervisor/Policymaker liability

Trowbridge is the only Defendant alleged to have had direct involvement in Happel's medical care during his time at the Venango County Prison.  However, Happel also contends that Bishop, as a policymaker at the prison, violated his constitutional rights by establishing and maintaining a policy that violated his constitutional right to adequate medical care.   It is well-established that § 1983 liability "cannot be predicated solely on the operation of *respondeat superior*."  *Evancho*, 423 F.3d at 353.  Consequently, to hold Bishop liable in this case, Happel must allege facts to show that he either "participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct," *Luzerne County*, 372 F.3d at 586, or, alternatively, that he, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm."  *A.M. ex rel. J.M.K. v.*

*Luzerne Cty. Juvenile Det. Ctr*., 372 F.3d 572, 586 (3d Cir. 2004).

Unlike the allegations against Trowbridge, Happel has not alleged any facts to support that Bishop participated in denying him his requested medication, directed others to do so, or, as the person in charge, had knowledge of and acquiesced in his subordinate's doing so.  Instead, Happel alleges that Bishop, as the warden of the prison, "was responsible for overseeing all aspects of the functioning of [the prison], including the provision of medical care, and he has or had rulemaking and policymaking authority regarding the jail."  ECF No. 48 ¶ 29.  In addition to alleging Trowbridge's direct involvement in denying his requested medication, Happel alleges that she, as the prison's head nurse, "created and implemented policy regarding treatment for OUD," in conjunction with Bishop.  *Id*. ¶ 30.  Happel avers that Bishop and Trowbridge created and implemented a policy requiring prison medical providers to deny buprenorphine (and any other MAT medication) to inmates suffering from OUD or withdrawal unless they were pregnant.  *Id*. ¶¶ 21, 26, 60.  At this stage of the proceedings, these averments are plainly sufficient to support that each defendant acted as policymaker responsible for adopting a policy that caused Happel's constitutional injury.  *See*, *e.g*., *Strickland*, 2022 WL 1157485, at *5 (allegation that a prison's warden and supervisory medical personnel "maintained a policy—the ban on methadone treatment for OUD—that caused the alleged constitutional violation" was sufficient to survive motion to dismiss); *McMillen v. Wetzel*, 2021 WL 5088069 (W.D. Pa. Sept. 22, 2021) (allegation that prison warden was "in charge of authorizing and upholding the medical and drug treatment policies" that deprived an inmate diagnosed with substance use disorder of MAT prescriptions was sufficient to state a plausible claim for supervisory liability).

e.   *Monell* liability

The final targets for Happel's deliberate indifference claim are Venango County, the

governmental entity that operates the Venango County Prison, and UPMC, the private entity

contracted to provide medical care to inmates at the prison.  In *Monell v. Department of Social

Services*, 436 U.S. 658 (1978), the United States Supreme Court held that "a municipality may

be liable under § 1983 'when execution of a government's policy or custom, whether made by its

lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts

injury that the government as an entity is responsible.'"  *Curran v. Venango County*, 2023 WL

8439274, at *4 (W.D. Pa. Nov. 2, 2023) (quoting *Monell*, 436 U.S. at 694).  This rule also

"extends to private corporations, like UPMC . . . that provide services pursuant to a government

contract."  *Id*. (citing *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003)).

To state a claim against "a municipality or a private corporation performing the functions

of a governmental body," the plaintiff must allege that a policymaker, "with deliberate

indifference to the consequences, established and maintained a policy, practice or custom which

directly caused [the plaintiff's] constitutional harm."  *Id*. (quoting source omitted).  It is the

plaintiff's burden "to show that a policymaker is responsible either for the policy or, through

acquiescence, for the custom."  *B.S. v. Somerset Cty.*, 704 F.3d 250, 274–75 (3d Cir.2013)

(quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir.1990)).  A policymaker is

an official with "final, unreviewable discretion to make a decision or take an action."  *Andrews*,

895 F.2d at 1481 (discussing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 139–40 (1988)).

Accordingly, to state a *Monell* claim upon which relief can be granted, a complaint must include

the identity of the municipal entity's final policymaker.  *See Santiago v. Warminster Twp.*, 629

F.3d 121, 135 & n. 11 (3d Cir. 2010) (requiring the plaintiff to "plead in some fashion" the

identity of an individual with "final policy making authority, as that is a key element of a *Monell*

claim"); *see also Simmons v. City of Philadelphia*, 947 F.2d 1042, 1062 (3d Cir. 1991) (citing

*Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701 (1989), for the proposition that a *Monell* plaintiff must "identify officials with ultimate policymaking authority in the area in question").

Happel's allegations satisfy this standard. His pleading avers that Venango County and UPMC, acting through policymakers Bishop and Trowbridge, implemented an official policy barring inmates suffering from OUD from receiving MAT unless they were pregnant. While Venango County and UPMC may dispute that Happel has correctly identified Bishop and Trowbridge as final policymakers relative to this policy, this is a dispute that cannot be resolved on a motion to dismiss. Happel has also adequately alleged that, as a direct result of this alleged policy, he was denied access to a medically necessary buprenorphine prescription without an opportunity to safely taper and deprived of any treatment at all for his severe opioid withdrawal symptoms. Venango County and UPMC's motions to dismiss must, accordingly, be dismissed. *Strickland*, 2022 WL 1157485, at *5 (holding that plaintiff had "properly alleged a constitutional violation traceable to Delaware County and [its privately contracted medical provider]" based on his allegation "that the denial of his prescribed methadone treatment was pursuant to an official policy").


III.    Conclusion

For the reasons stated herein, it is respectfully recommended that each of Defendants' motions be granted in part and denied in part. Specifically:

1)    The motions to dismiss filed by Trowbridge [ECF No. 49] and UPMC [ECF No. 53] should be GRANTED as to Happel's ADA and RA claims but DENIED as to Happel's Fourteenth Amendment medical indifference claims. Happel's ADA and RA claims against Trowbridge and UPMC should be dismissed, with prejudice.

2)    The motion to dismiss filed by the Venango County Defendants [ECF No. 55] should be GRANTED as to all claims against Smith and the Venango County Prison and GRANTED as to Happel's ADA claim against Bishop. Smith and the Venango

County Prison should be terminated from this action, and Happel's ADA claim against Bishop should be dismissed, with prejudice.

3) The Venango County Defendants' motion to dismiss should be DENIED as to all claims against Venango County and DENIED as to Happel's Fourteenth Amendment medical indifference claim against Bishop.

4) To the extent that the Venango County Defendants have moved in the alternative for summary judgment, the motion should be DENIED without prejudice based on Happel's Rule 56(d) affidavit. The Venango County Defendants should be permitted to renew their motion for summary judgment after Happel has had an opportunity to conduct discovery regarding the matters identified in his Rule 56(d) affidavit.

Should this Report be adopted, the following claims will proceed to discovery: Happel's ADA and RA claims against Venango County; his deliberate indifference claim against Trowbridge and Bishop; and his *Monell* claim against Venango County and UPMC.

IV.   Notice

In accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72, the parties may seek review by the district court by filing Objections to the Report and Recommendation within fourteen (14) days of the filing of this Report and Recommendation. Any party opposing the objections shall have fourteen (14) days from the date of service of Objections to respond thereto. *See* Fed. R. Civ. P. 72(b)(2). Failure to file timely objections may constitute a waiver of appellate rights. *See Brightwell v. Lehman*, 637 F.3d 187, 194 n.7 (3d Cir. 2011); *Nara v. Frank*, 488 F.3d 187 (3d Cir. 2007).

DATED this 22nd day of February, 2024.

SUBMITTED BY:

RICHARD A. LANZILLO
CHIEF UNITED STATES MAGISTRATE JUDGE